```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| LEONARDO HILARIO-HILARIO,<br><br>**Petitioner**<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>**Respondent.** | **CIVIL NO.** 12-1203 (JAG)<br>**Rel. Crim. No.** 04-405 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

On May 17, 2005 a grand jury returned a second superseding indictment against Leonardo Hilario-Hilario ("Hilario" or "petitioner") charging him and four other defendants of an alien smuggling offense under Title 8, United States Code, Section 1324(a)(1)(A)(I) and (v)(II); namely, bringing or attempting to bring to the United States at a place other than a designated port of entry, for financial gain and profit, and by use of an unseaworthy and overcrowded yawl, approximately eighty-seven (87) aliens, knowing that said persons were aliens and regardless of whether such aliens had received prior official authorization to come, enter and reside in the United States.

D.E. 213 in case 04-405 (JAG). According to said indictment, this violation resulted in the death of seven persons.[1]

After fifteen days of trial, held between July and August of 2005 and during which Hilario was represented by counsel, a jury returned a verdict finding him guilty of count one of the second superseding indictment, with special findings that the offense was committed for private financial gain, that during the offense Hilario placed in jeopardy the life of a person, and that the offense resulted in the death of a person. D.E. 332 in case 04-405 (JAG). On September 18, 2005, Hilario filed a motion to vacate his conviction pursuant to Federal Rules of Criminal Procedure 29 and 33. D.E. 369 in case 04-405 (JAG). That motion was denied by the Court on November 18, 2005. D.E. 433 in case 04-405 (JAG). Three days afterwards, Hilario was sentenced to serve two hundred and four months of imprisonment, and five years of supervised release. D.E. 441 and 546 in case 04-405 (JAG).[2] Judgment was entered accordingly on December 27, 2005. D.E. 472 in case 04-405 (JAG).

The day after he was sentenced and before judgment had been entered, however, Hilario filed a notice of appeal. D.E. 444 in case 04-405 (JAG); USCA Case Number 06-1007. A second notice of

---

[1] The second superseding indictment contains other counts, but Hilario was only charged in count one.

[2] The applicable special monetary assessment of $100 was also imposed as part of the sentence.

appeal was filed by Hilario, this time *pro se*, on December 1, 2005. D.E. 453 in case 04-405 (JAG); USCA Case Number 06-1008. On April 20, 2006, the Court of Appeals for the First Circuit ordered that Hilario's *pro se* appeal be voluntarily dismissed pursuant to FED.R.APP.P. 42(b); a judgment and mandate were issued accordingly. D.E. 517 in case 04-405 (JAG). Unfortunately for Hilario, his other appeal did not fare any better, as on June 20, 2008 the First Circuit proceeded to affirm his conviction and sentence. D.E. 566 and 571 in case 04-405 (JAG).

Undismayed, on September 16, 2009, Hilario filed a motion under Title 28, United States Code, Section 2255 ("the § 2255 motion") seeking to vacate, set aside or correct his sentence under a panoply of arguments. D.E. 629 in case 04-405 (JAG); D.E. 1 in case 09-1941 (JAG). In his § 2255 motion, Hilario argues that: (1) he was innocent of the charge for which he was convicted because he was merely a passenger that was not part of a smuggling crew; (2) he was denied effective assistance of counsel at the sentencing hearing because his attorney did not point to the court that the indictment failed to identify him as a leader and did not specify the use of any weapon; (3) he did not receive effective assistance of counsel because his trial attorney did not file a motion to dismiss the indictment; (4) he was denied effective assistance of counsel because he told counsel that he wanted to testify at trial; (5) his attorney was

ineffective by failing to bring to the jury's attention that Hilario had paid 35,000 pesos to come to the United States of America; (6) he is a victim of prosecutorial misconduct because the prosecutor allegedly knew that Hilario was innocent of the charge for which he was convicted; (7) he was convicted because the prosecution defied a court order not to show to the jury a videotape that displayed corpses; and (8) he received ineffective assistance of counsel during the appellate process because his appellate attorney did not raise many of the issues that Hilario raises in his § 2255 motion.

The government filed a response to petitioner's §2255 motion and Hilario filed a reply to said response. D.E. 8 and 11 in case 09-1941 (JAG). For the reasons detailed below, petitioner's §2255 motion is denied.

**ANALYSIS**

A. <u>Claim of innocence</u>

Petitioner claims that he is innocent of the alien smuggling offense for which he was convicted. In essence, his legal theory is that he was merely attempting to enter illegally into the United States, that he paid 35,000 for such venture, and that he was not in charge of leading or organizing the same. Hence, from Hilario's perspective, his only violation is his attempt to enter illegally into the United States, not helping others to enter illegally into the United States. Petitioner's

reasoning, however, is unavailing. From a procedural point of view Hilario had to raise this argument on direct appeal. Due to the fact that one of the arguments that Hilario makes in his §2255 motion is that his appellate counsel failed to raise this issue on direct appeal, for all practical purposes petitioner is conceding that he has procedurally defaulted on his innocence claim. Moreover, a review of the appellate opinion suggests that one of the co-defendants, Kennedi Martínez, did raise this argument on appeal, but not so Hilario. See U.S. v. Hilario-Hilario, 529 F.3d 65, 74-75 (1st Cir. 2008).  Therefore, petitioner is precluded from bringing this issue at this stage of the proceedings, unless there is a showing of cause and prejudice. Stone v. Powell, 428 U.S. 465, 478 n.10 (1976) ("[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."); U.S. v. Frady, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."); McCleskey v. Zant, 499 U.S. 467, 493 (1991) ("In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim... Objective factors that constitute cause include 'interference by officials that makes compliance with the State's procedural rule impracticable',... 'a showing that

**CIVIL NO.** 09-1941 (JAG)                                                                 6

the factual or legal basis for a claim was not reasonably available to counsel', [and] 'ineffective assistance of counsel'. Once the petitioner has established cause, he must show 'actual prejudice' resulting from the errors of which he complains.")

Under these circumstances of procedural default, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." Schlup v. Delo, 513 U.S. 298, 316 (1995). Hilario, however, has failed to show cause, prejudice, and ultimately, that a miscarriage of justice has occurred.

We begin our analysis by referring to the First Circuit's own review of the record:

> A fifteen-day jury trial followed at which ten of the passengers testified. The government relied heavily on eyewitness testimony to establish that the five defendants operated the vessel. Several passengers testified that [Fernando José] Milán, [Delgadino]

>Peguero, and [Santiago] Rodríguez piloted the yawl at various points during the journey; [Kennedi] Martínez was identified as having navigated and steered the vessel with the help of a GPS or similar device, and *Hilario was described as the "head captain" who gave orders to the others and maintained contact via cellular telephone with other organizers on land.*
>
>The government also presented evidence to show the unseaworthiness of the vessel. The passengers described the overcrowded, unsafe, and unsanitary conditions on the vessel. Three members of the Coast Guard, who had participated in the rescue efforts, described the conditions of the surf, the rudimentary construction of the yawl (which had fallen apart in the surf along the Vega Alta coast), and the vessel's lack of bathrooms, lights, seats, radio, or appropriate safety or navigational equipment.

United States v. Hilario-Hilario, 529 F.3d 65, 69-70 (1st Cir. 2008) (emphasis added).

A review of the trial transcript lends support to the summary given by the First Circuit. Testimonial evidence, mainly from passengers of the vessel, identified Hilario: **(1)** as one the captains of the boat, (D.E. 343 in case 04-405 (JAG) at p.150-151; D.E. 344 in case 04-405 (JAG) at p.5-6; D.E. 345 in case 04-405 (JAG) at p.21); **(2)** as the head among the captains, (D.E. 348 in case 04-405 (JAG) at p.62, 65-66, and 83-85 (the person giving the order, the "leader", the "boss"); D.E. 350 in case 04-405 (JAG) at p. 86 ("the number one guy" because "[h]e was the one telling them what they had to do...."); D.E. 352 in case 04-405 (JAG) at p.37 ("he seemed to be the one that was directing the trip more or less")); **(3)** piloting or navigating

the vessel, (D.E. 350 in case 04-405 (JAG) at p.10-11; D.E. 352 in case 04-405 (JAG) at p.26); **(4)** handling a device to navigate from the Dominican Republic to Puerto Rico, (D.E. 346 in case 04-405 (JAG) at p.85-86); and **(5)** as having a cellular telephone to among other things coordinate ground transportation for the aliens once they arrived to Puerto Rico, (D.E. 344 in case 04-405 (JAG) at p.5-6; D.E. 345 in case 04-405 (JAG) at p.34-36; 44; 48; D.E. 346 in case 04-405 (JAG) at p.81; D.E. 350 in case 04-405 (JAG) at p.91; D.E. 352 in case 04-405 (JAG) at p.21-22 and 31; D.E. 358 in case 04-405 (JAG) at p.66, 75 and 146 ("he was communicating with someone that was going to come in a minibus to kidnap us all")).

The government also presented evidence from various passengers about payments they made in Dominican pesos to travel to Puerto Rico from the Dominican Republic. <u>E.g.</u>, D.E. 346 in case 04-405 (JAG) at p.47-48; D.E. 347 in case 04-405 (JAG) at p.5; D.E. 350 in case 04-405 (JAG) at p.77.[3] Furthermore, testimony was given as well as to the unsanitary conditions of the trip, Hilario's own acknowledgment of the desperate situation, how the yawl capsized and the fact that there were

---

[3] Evidence was also introduced as to the fact that the passengers would have to pay an additional sum of money once they arrived to Puerto Rico for ground transportation. D.E. 345 in case 04-405 (JAG) at p.33; D.E. 358 in case 04-405 (JAG) at p.147.

**CIVIL NO.** 09-1941 (JAG)                                                    9

people drowning at sea. See D.E. 346 in case 04-405 (JAG) at p.24-33; 83-84; D.E. 347 in case 04-405 (JAG) at p.23-24 and 41.

In sum, there is *abundant* evidence on the record showing that Hilario was more than just a mere passenger attempting to enter illegally in the United States. Therefore, he has not shown that an exception to the procedural default scenario should be made and that a miscarriage of justice would result if he is not allowed to raise his innocence claim now collaterally through his §2255 motion.

**B. Lack of detail in the indictment**

Petitioner makes an issue about the fact that count one of the second superseding indictment does not identify him as a leader or captain, and that no mention is made in said count about weapons. There is no merit to this contention. An indictment does not have to detail leadership roles or use of firearms in the commission of the offense as long as those elements do not implicate an enhancement to the statutory penalties that the defendant faces if convicted. Apprendi v. New Jersey, 530 U.S. 466 (2000). Although leadership role and use of weapons may carry consequences in terms of the applicable United States Sentencing Guideline calculations, they do not in terms of the statutory penalties applicable to Title 8, United States Code, § 1324. Thus, Hilario's allegations that his attorney was somehow ineffective at the sentencing hearing

because he did not argue that lack of specificity in the indictment is summarily dismissed.

To the extent that Hilario is alleging that his attorney was ineffective during the sentencing hearing regarding both his role in the offense and the use of a weapon, these arguments were already disposed of on appeal. With respect to the role adjustment, the First Circuit stated the following:

> Hilario argues for himself that the district court improperly applied a three-level increase to his offense level based on his role as a "manager or supervisor" of the smuggling operation. Such an enhancement is appropriate "if there is evidence that a defendant, in committing the crime, exercised control over, or was otherwise responsible for overseeing the activities of, at least one other person." United States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996) (quoting United States v. Savoie, 985 F.2d 612, 616 (1st Cir. 1993)).
>
> Hilario used a cellular phone and was overheard discussing logistics of the operation with another participant; he was also identified as the captain who gave instructions to other participants and determined whether and when the boat would be brought to shore. The district court was entitled to impose the upward adjustment based on this evidence.

U.S. v. Hilario-Hilario, 529 F.3d 65, 77-78 (1st Cir. 2008). Moreover, at the sentencing hearing, defense counsel vigorously objected to the upward adjustment based on leadership role - a fact that does not harmonize with Hilario's ineffective assistance of counsel claim. D.E. 546 in case 04-405 (JAG) at p.5.

With respect to the use of a weapon, the First Circuit added:

> The defendants say that the knife was brought on board innocently and that smuggling of illegal aliens does not normally involve coercion or violence. But the knife was still a weapon and, in this operation, the passengers were not to be released until additional sums were paid to the organizers upon their arrival—resistance being a real possibility in such a situation. Under these circumstances we cannot say that it was clear error to find that misuse of the knife was reasonably foreseeable. See United States v. Santiago, 200 Fed.Appx. 928, 934-35 (11th Cir. 2006) (unpublished decision).

Moreover, at the sentencing hearing defense counsel joined his other co-counsel's arguments as to the enhancement concerning the use of a machete, once again suggesting that he did not simply sit passively at the sentencing hearing, but rather advocating on Hilario's behalf.  D.E. 546 in case 04-405 (JAG) at p.3.

"Issues resolved by a prior appeal will not be reviewed again by way of a 28 U.S.C §2255 motion."  Murchu v. U.S., 926 F.2d 50, 55 (1st Cir. 1991) (citation omitted).  Therefore, to the extent that Hilario is merely attempting to obtain his second bite at the apple collaterally, such effort will not be entertained by the Court.

## C. Dismissal of the indictment

Hilario argues that his attorney was ineffective because he failed to file a motion to dismiss the indictment on grounds that the government could only have charged him with an immigration offense of illegal entry. Once again, this argument does not hold water. Petitioner's contention disregards the notion of prosecutorial discretion. De la Cruz v. Holder, 399 Fed.Appx. 317, 318 (9th Cir. 2010) (unpublished) (citing Ira J. Kurzban's Immigration Law Sourcebook (12th ed. 2010) "Prosecutorial discretion includes a broad spectrum of discretionary enforcement decisions including: whether to charge an individual; what charges to bring; to drop any charges in an ongoing case; and to settle a case by plea bargaining."). If Hilario did not have any permission from the pertinent legal authorities to enter legally into the United States, then the government might have opted to charge him with an illegal entry violation under Title 8, United States Code, Section 1325 (or Section 1326 if it occurred after having been previously deported). Such scenario, however, does not preclude the government from pressing charges for alien smuggling. As seen from the summary of the evidence presented at trial, there was sufficient evidence for a jury to convict him of such offense. Hence, there is no basis to conclude that Hilario's attorney was somehow ineffective for not requesting the dismissal of the

**CIVIL NO.** 09-1941 (JAG)                                                    13

indictment on grounds that the government should have opted for a less severe charge.

## D. Failure to testify at trial

Petitioner claims that he wanted to testify at trial and that his attorney should have given him the opportunity to state to the jury that Hilario paid 35,000 Dominican pesos to enter illegally into the United States. First, we begin by noting that in his closing argument to the jury, Hilario's counsel did articulate petitioner's legal theory: "I represent Mr. Leonardo Hilario Hilario, who, as the rest of the passengers of that yawl, came here seeking the same opportunities that they were seeking: to improve his economic situation."  D.E. 551 in case 04-405 (JAG) at p.56.  Second, petitioner has not pointed to any portion of the record where he or his attorney expressed his wish to take the stand.  Third, after the government rested, the defense counsel, at a bench conference, opted not to present any witnesses:

> MR. CORONA:   Now that the government has rested, we want to inform the court that we are not going to be presenting any witnesses, Your Honor.  We believe, based on what we've seen in the case and our cross and everything else, we have decided that we are not going present [to] present any.

D.E. 352 in case 04-405 (JAG) at p.110.

> MS. SHEPARD:   Then the reason we advised the court today that we are not presenting any

|  |  |
|---|---|
|  | witnesses now, every single day after lunchtime we have a pow wow and we decide what we are going to do and we have tried to work this case as a team. And I think we have done it.  And the decision was not made. |
| THE COURT: | You are sure you are not going to be presenting any evidence? |
| MR. CORONA: | We are sure, Your Honor.  We are not telling this to the court just to say it.  We are sure. |

D.E. 352 in case 04-405 (JAG) at p.116-117).[4]

It is evident from the expressions made by defense counsel to the court that the attorneys for all the defendants that exercised their right to a trial by jury made a concerted, strategic decision not to present any witnesses. Although "[t]he decision whether to testify lies squarely with the defendant [as] it is not counsel's decision", Cannon v. Mullin, 383 F.3d 1152, 1171 (10th Cir. 2004), "the district court does not have a *sua sponte* duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify... Absent evidence of something to alert the district court to a problem in the client-counsel relationship, such as conduct falling below the Sixth Amendment standard of Strickland v. Washington, 466 U.S. 668 (1984), a *per se* rule would be an inappropriate interference

---

[4] Hilario's attorney at the trial level was counsel David Ramos Pagán, not counsel Michael Corona or counsel Olga Shepard.

**CIVIL NO.** 09-1941 (JAG)                                                   15

with the client-counsel relationship when the court can (and should) readily determine from counsel whether the defendant has been properly advised." U.S. v. Ortiz, 82 F.3d 1066, 1070-71 (D.C. Cir. 1996).

"A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." U.S. v. Webber, 208 F.3d 545, 551 (6th Cir. 2000). In the case at bar, Hilario did not testify and he has not shown any evidence on the record that he communicated to the court that he had disagreements with his trial attorney. Therefore, waiver is presumed and he cannot now claim that he had disagreements with his attorney when no inkling of such issues surfaced before the court at trial.

**E. Claims of prosecutorial misconduct**

Hilario claims that the prosecutors knew that he was innocent of the charge for which he was convicted and yet decided to prosecute him despite the alleged exculpatory

CIVIL NO. 09-1941 (JAG)                                                          16

evidence to the contrary. Furthermore, he claims that the prosecutors without justification showed to the jury a videotape that displayed dead bodies, "knowing that the jury would not have no compassion, for none of the men on trial." D.E. 1 in case 09-1941 (JAG) at p.7. "Claims alleging prosecutorial misconduct must be raised on direct appeal." Bigelow v. Culpepper, 2012 WL 1057974 (M.D.Fla. 2012); see also Ameri v. U.S. 2007 WL 1965414 (E.D. Ark. 2007) (unreported) ("claims of prosecutorial misconduct known to the defendant at the time of trial must be raised by direct appeal and provide no basis for post-conviction relief") (citing U.S. v. Little, 608 F.2d 296, 300 (8th Cir. 1976); U.S. v. Rivera-Moreno, 2007 WL 1703406 (D.Neb. 2007). Otherwise, these claims are unexhausted and procedurally barred.

There is no indication from the decision rendered by the Court of Appeals for the First Circuit that petitioner argued before said forum the issues that he is now raising for the first time. See U.S. v. Hilario-Hilario, 529 F.3d 65 (1st Cir. 2008). Therefore, Hilario's attempt to bring prosecutorial misconduct claims collaterally for the first time need not be addressed on the merits.

**F. Ineffective assistance of appellate counsel**

Finally, Hilario alleges that he received ineffective assistance of counsel at the appellate level because he failed

to raise many of the issues that he is now raising in his § 2255 motion.

> To establish ineffective assistance of appellate counsel, a defendant "must first show that his counsel was objectively unreasonable." Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). As applied to appellate counsel, that standard is difficult to meet because, to be effective, "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Id. at 288, 120 S.Ct. 746. If a defendant succeeds in making that showing, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Id. at 285, 120 S.Ct. 746. In applying this test, courts "presume that the result of the proceedings on appeal is reliable ... and ... require [the defendant] to prove the presumption incorrect in his particular case." Id. at 287, 120 S.Ct. 746. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).

Thompson v. Spencer, 111 Fed.Appx. 11, 13 (1st Cir. 2004) (unpublished). Petitioner has not developed in any significant way his ineffective-appellate-counsel argument; instead, he raises the argument in a conclusory fashion. "Claims raised in a perfunctory manner without elaboration are deemed waived." Angulo-Hernández v. U.S., 2011 WL 2460877 at *4 n.7 (citing Cody v. United States, 249 F.3d 47, 53 n.6 (1st Cir.2001)). Moreover, some of the issues raised by Hilario in his § 2255

motion have already been addressed by the First Circuit. Entertaining his blanket assertion of ineffective assistance of appellate counsel would open the door to the presentation of these issues yet again to said appellate forum. The court declines such course of action.

## CONCLUSION

Petitioner has failed to show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 and 694 (1984). Therefore, Hilario's *habeas corpus* petition under Title 28, United States Code, Section 2255 (Docket No. 1) is hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of September, 2012.

                                    s/ Jay A. García-Gregory
                                    UNITED STATES DISTRICT JUDGE